

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEL:RAS
F. #2020R00856

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 1, 2021

By ECF

Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Long Hui Lin
            Criminal Docket No. 20-452 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter in advance of the sentencing of the defendant Long Hui Lin, which is scheduled for September 8, 2021 at 2 p.m. For the reasons stated below, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 12 to 18 months' imprisonment.

I.      The Offense Conduct

      On September 5, 2020, United States Customs and Border Protection ("CBP") officers at John F. Kennedy International Airport ("JFK") in Queens, New York, conducted a border search of a package that had been shipped to New York from Pakistan. (Presentence Investigation Report ("PSR") ¶ 5). The package contained two boxes containing a combined weight of 19.01 kilograms of ketamine, a Schedule III controlled substance. (Id.). The estimated street value of that quantity of ketamine at that time was between $761,600 and $1,142,000. (Id.). After removing the ketamine and placing a GPS tracking device inside the package, law enforcement conducted a controlled delivery. (Id.). Specifically, on September 11, 2020, an individual known to the government who was not a participant in the relevant conspiracy ("Individual-1") retrieved the package from JFK and brought it to a residence in Queens, New York. (Id. ¶ 7). Individual-1 reported to law enforcement that a second individual ("Individual-2") had asked Individual-1 through the WeChat messaging service to retrieve the package and await further instructions. (Id.). While law enforcement was reviewing on consent the WeChat messages between Individual-1 and Individual-2, Individual-2 again contacted Individual-1 to coordinate delivery of the package to Individual-2's friend. (Id.). Law enforcement worked with Individual-1 to coordinate the delivery. (Id.).

On September 16, 2020, co-defendant Ye Zhen Zhao ("Zhao"), contacted Individual-1 and advised that she would pick up the package. (Id. ¶ 8). At the direction of law enforcement, Individual-1 scheduled the meeting at the intersection of 39th Avenue and College Point Boulevard in Flushing, New York (the "Intersection"). (Id.). Later that day, Zhao parked in a Toyota Rav4 at the Intersection. (Id.). Law enforcement observed Zhao exit her vehicle, approach co-defendant Chen Han Chen ("Chen") who was parked nearby in a 2017 Porsche Cayenne, and hand him a small black item, which was a device used to detect surveillance devices such a GPS trackers and audio-recording devices. (Id.). When Individual-1 and an undercover law enforcement officer arrived at the Intersection, the undercover officer moved the package into Zhao's vehicle, and Zhao paid the undercover officer $500 in cash. (Id.). Zhao and Chen then left in their respective vehicles. (Id.).

Law enforcement stopped both Zhao and Chen separately. Zhao was in possession of the package that previously contained ketamine and a phone ("Zhao's Phone"). (Id. ¶ 9). Law enforcement obtained information from Zhao's Phone that included communications with the defendant and Chen, both individually and collectively. For example, shortly after Zhao took possession of the package previously containing ketamine, the defendant wrote to Zhao using WeChat and told her to park her vehicle somewhere overnight and to wait until the middle of the night to return to check the area of her vehicle. (Id.). He also directed her to "wander" in a mall, call a car service to pick her up and not wait for Chen. (Id.). The defendant further told Zhao that, because the drug-laden package was not open, "they will normally not take action." (Id.).

Zhao's Phone also contained drug related communications with Chen, and a video sent to the defendant showing the defendant stacking large quantities of U.S. currency inside of a black bag. (Id. ¶¶ 10, 14). Images from the video are below:




When confronted with the video, Zhao told law enforcement that the video was taken inside a residence in Brooklyn, New York, that was used as a stash house for money and possibly narcotics. (Id. ¶ 10). She erroneously reported that it was taken inside the basement of an address on 80th Street in Brooklyn, New York. (Id.). However, metadata showed that the video was actually recorded in the vicinity of 1360 79th Street in Brooklyn, New York (the "Premises"). (Id.). Based in part on this information, among other evidence, law enforcement obtained a warrant to search the Premises. (Id.).

On September 17, 2020, law enforcement surveilled the Premises and executed the search warrant. (Id. ¶ 11). During initial surveillance, law enforcement observed an uncharged co-conspirator ("CC-1") hand a bag to an individual in a BMW parked in front of the Premises. (Id.). Upon being stopped by law enforcement, the individual in the BMW admitted that he purchased one pound a marijuana, which law enforcement seized, and that he had previously made regular purchases of marijuana from the Premises. (Id.). Upon entering the Premises, law enforcement observed an uncharged co-conspirator in a room cooking and cutting a substance that appeared to be ketamine with a cutting agent. (Id. ¶ 12). Law enforcement also found in that same room four digital scales, numerous empty bottles, numerous glass vials with labels on which the chemical name for ketamine was printed, numerous zip lock bags and a microwave that appeared to be used for cooking narcotics. (Id.).

In a second room, law enforcement officers encountered the defendant, CC-1 and another uncharged co-conspirator, all of whom were in close proximity to both narcotics and currency. (Id. ¶ 13). Law enforcement seized from that second room $258,130 in United States currency, two money counting machines, approximately three kilograms of a leafy substance that appeared to be marijuana and liquid ketamine, which was found in glass vials of the same type as the empty vials found in the first room. (Id.). The aggregate weight of the ketamine seized was 10.356 grams. (Id.).

In addition to the items seized in the Premises, a search of the defendant's Porsche, which was parked just outside of the Premises, recovered $69,970. (Id. ¶ 15). At the time of his arrest, the defendant claimed that he was able to purchase a Porsche because he won $150,000 in Las Vegas, Nevada. He also reported that he received money from his fiancée's family members. (Id.). He further claimed that the money found in the Porsche had been pooled together by several individuals in order to provide bail money for Chen, who had been arrested the previous day, and that the defendant had contributed $6,000 to the pool of money. (Id.). After his arrest, the defendant reported that he sold his Porsche for $85,000 and received $58,000 from the sale. (Id. ¶ 62).

II.          Arrest and Plea

The defendant was arrested on September 17, 2020, at the time of the Premises search. (PSR ¶ 15). After initially being charged by complaint on September 18, 2020, the defendant was charged on October 15, 2020, by indictment with three counts for (i) conspiracy to import ketamine, (ii) conspiracy to distribute and possess with intent to distribute ketamine and (iii) possession of ketamine with intent to distribute, in violation of Title 21, United States Code, Sections 841, 846, 960 and 963. (ECF No. 26). On March 22, 2021, the defendant

pleaded guilty before this Court to Count One, charging him with conspiracy to import ketamine. (PSR ¶ 1). The total amount of ketamine attributable to the defendant is 19,021 grams. (Id. ¶ 16).

III.   Guidelines Calculation

The government agrees with the United States Probation Department's ("Probation") calculation of the defendant's offense level in the Addendum to the PSR (the "PSR Addendum"), as set forth below:

| | |
|---|---:|
| Base Offense Level (§§ 2D1.1(c)(13)) | 14 |
| Less: Acceptance of responsibility (§ 3E1.1(a)) | -2 |
| Total: | 12 |

(PSR ¶¶ 25–33). The total offense level is 12, which, based on a Criminal History Category of II, carries an advisory Guidelines range of 12 to 18 months' incarceration. (PSR Addendum ¶ 66).

IV. Argument

The government respectfully submits that a sentence within the applicable Guidelines range of 12 to 18 months' incarceration is sufficient, but not greater than necessary to achieve the goals of sentencing.

As the Court is aware, an appropriate sentence should reflect, among other things, the seriousness of the offense, promote respect for the law and provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A). In addition, an appropriate sentence should take into account the history and characteristics of the defendant, see id. § 3553(a)(1), and should afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner, id. §§ 3553(a)(2)(B)-(D).

Initially, the defendant's crime—conspiring to import over 1.9 kilograms of ketamine into the United States, which is a distribution-level quantity that was at the time valued at approximately one million dollars—is serious. The defendant imported a large and valuable quantity of ketamine into the United States and describes in his own sentencing submission the dangers ketamine poses to society. (See Def. Sentencing Mem., ECF No. 45 at 16-17 ("Short-term exposures to ketamine at sub-anesthetic doses have been observed to produce impairments of cognitive functions and perceptual alterations, impaired visions, delusions, depersonalization and derealization in healthy individuals and long-term exposure has been linked to cell death in the prefrontal cortex and significant impairment and disruption in multiple brain structures, regions and functions, including overall decreased brain volume.")). A sentence within the applicable Guidelines is needed to impress upon would-be drug traffickers respect for United States drug laws and deter future drug trafficking activity, which is a frequent and ongoing problem in New York airports.

4

   Further, the defendant's involvement in the drug trafficking enterprise extends beyond the single package of ketamine imported into the United States and seized by law enforcement on September 5, 2020.  This is evidenced by the defendant's WeChat communications with Zhao in which the defendant acted as the voice of experience, informing Zhao that law enforcement "will normally not take action" if a package containing narcotics has not been opened.  (PSR ¶ 9).  The expansiveness of the drug operation in which the defendant participated is also evidenced by the seizure of more than $258,000, money counters and ketamine cooking materials from the stash house from which the defendant was arrested, as well as from the fact that the defendant had access to significant funds, allowing him to purchase a Porsche from which almost $70,000 was recovered.  (Id. ¶¶ 12, 13, 15).

   For the foregoing reasons, a sentence within the applicable Guidelines range is sufficient, but not greater than necessary to achieve the goals of sentencing.  The defendant's arguments to the contrary are uncompelling.  The defendant argues that his need for mental health and drug treatment as well as the financial hardships a custodial term would impose upon his family militate against a custodial term.  With respect to the alleged need for treatment, it is notable that the defendant has been on pretrial release for almost one year.  There is no indication that the defendant has sought or received any mental health or drug treatment during that time.  The government conferred with Pretrial Services and confirmed that the defendant has not received or requested any such treatment.  The defendant further reported to Probation that he is in good mental and emotional health and has no history of mental or emotional problems.  (PSR ¶ 52).  He also reported to Probation that he is not interested in drug treatment counseling.  (Id. ¶ 53).  With respect to the alleged financial hardship, the defendant reported to Probation a total net worth of $19,321.  (Id. ¶ 62).  He also reported that he sold his Porsche for $85,000 and received $58,000 from the sale.  (Id.).  Finally, the defendant reported to law enforcement at the time of his arrest that he received money from his fiancée's family members to help care for their child, and he reported to Probation that he has been employed earning $1,785 per month since November 2020.  (Id. ¶¶ 15, 58).  Accordingly, the defendant has funds to contribute to support his family during any custodial term.

V.	Conclusion

   The government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 12 to 18 months' incarceration.

               Respectfully submitted,

               JACQUELYN M. KASULIS
               Acting United States Attorney

         By: /s/ Rachel A. Shanies
             Rachel A. Shanies
             Assistant U.S. Attorney
             (718) 254-6140

cc: Clerk of the Court (RPK) (by ECF and E-mail)
   Howard Greenberg, Esq. (by ECF and E-mail)
   Jamie L. Turton, United States Probation Officer (by E-mail)